## M. M. DUPOUEY v. UNITED STATES

**No. 6139.**—Invoices dated Merida, Yuc., Mexico, May 10, 1938, etc.
Certified May 11, 1938, etc.
Entered at New Orleans, La., May 18, 1938, etc.
Entry No. 3723, etc.

(Decided April 30, 1945)

*Philip Stein* (*Tompkins & Tompkins*, associate counsel, by *J. Stuart Tompkins* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

*William Whynman*, amicus curiae.

EKWALL, Judge: This is an appeal for reappraisement of a quantity of unoiled sisal twine exported from Merida, Mexico, on May 11 and June 21, 1938, and entered at the port of New Orleans, La. It was appraised on the basis of United States value as that value is defined in section 402 (e) of the Tariff Act of 1930.

Reappraisement No. 126256–A was invoiced at $0.30 Mexican currency per kilogram, f. o. b. Merida, plus certain charges, and was entered at the same unit value, plus selling commission, covering, and cost of packing, plus $17.10 Mexican currency to make market value. The value found by the appraiser was $7.1541 per 100

pounds for the 1-ply and 2-ply, 500 feet to the pound twine; and $5.649 per 100 pounds for the 2-ply 300-foot twine.

In Reappraisement No. 127654–A the twine was invoiced at $0.30 Mexican currency per kilogram, f. o. b. Merida, plus certain charges, and was entered under so-called duress, to meet the value found by the appraiser in Reappraisement No. 126256–A.

The plaintiff called two witnesses, Mr. Escalante, director general of Compania Cordelera Mayapan, the shipper of the twine, and Mr. Kerwin, the United States examiner at New Orleans. Plaintiff also produced and there was received in evidence as exhibit 1 an affidavit of Tomas Martin, manager of Cordeleria Santa Ines S. de R. L. mill of Merida, Mexico.

The testimony of Mr. Escalante was to the following effect. In his capacity as director general of Compania Cordelera Mayapan he conducts sales and purchases; that this company is one of the larger manufacturers of twine and cordage in Mexico; that he is familiar with market conditions in Mexico during the first half of 1938; that Merida was the principal market for twines in Mexico and that the larger mills are located there; that during March, April, May, and June of 1938, he made some sales at wholesale of unoiled Agave sisalina twine such as is here involved and that the highest price he obtained on any of wholesale transactions for such twine was 35 "cents" per kilo, Mexican currency, f. o. b. his mill in Merida, packing included, less 10 per centum and 2 per centum for cash. This 2 per centum was a trade discount for cash. His company does not impose restrictions over the sale or resale prices to its customers. He did not know of any sale during the 4 months mentioned at prices higher than the price he obtained. These shipments were sample shipments made in an effort to introduce the goods in this market. He did not believe that any sales were made to customers in the United States because in the months mentioned there was no merchandise being exported except for sample purposes.

The affidavit of Tomas Martin, in evidence, gives a list of 14 sales made from March to the middle of July 1938 to purchasers in Mexico of unoiled Agave sisalina 2-ply sisal twine, 500 feet to the pound, in the usual wholesale quantities, all at $0.35125 per kilo Mexican currency f. o. b. mill, less 10 per centum discount. As to the 2-ply sisal twine, 300 feet to the pound, affiant enumerates 6 sales made during the months in question, the highest price shown being $0.34 per kilo f. o. b. mill, less 10 per centum discount, and for the same period 1-ply sisal twine was sold by affiant to purchasers in Mexico, the highest price shown being $0.33125 per kilo f. o. b. mill, less 10 per centum discount. Affiant further states that no sales were made at higher prices than those above enumerated during the period in question and that the market was in no way restricted or controlled with respect to sale or

resale prices, distribution, or use, and that the mill in Merida was one of the principal markets in Mexico for both the manufacture and sale of twines of various kinds.

The Government examiner testified on behalf of the plaintiff that he examined and advisorily passed upon the instant importations; that the appraiser who is no longer in the Government service accepted his return as to value. He stated that the basis for his findings was the price at which a dealer was offering Mexican twine in New Orleans; that this dealer was Mr. George Palmer who told him that he had offered merchandise from a previous shipment made by Mr. Escalante (entry 188) in July 1937. Apparently all of the information as to prices which the examiner obtained was that furnished by Mr. Palmer. He further stated that the amounts for freight, insurance, and other charges which he used in his return of value were obtained from statements in the earlier invoice, entry No. 188, above referred to. The examiner did not know whether Mr. Palmer sold any of the merchandise referred to. The offers of sale were made around July 7, 1937, whereas the instant merchandise was exported in May and June 1938, respectively.

It was disclosed in the course of the examiner's testimony that the twine involved in entry No. 188 was described as "Cambric," but that said examiner did not know the meaning of that term and only took into consideration the number of feet to the pound.

Mr. Escalante, upon being recalled, explained the meaning of the term "Cambric" in connection with twine to be a trade expression for laid. He further stated that the instant merchandise is twisted and that there is a difference in the price, the cambric being a superior quality of twine and higher in price.

It is contended on behalf of the Government that inasmuch as the affidavit in evidence contains a statement that the products mentioned therein "contain also Agave Forcloydes in minor percentage" whereas the instant twine is described as manufactured from Agave sisalina, plaintiff's exhibit 1 fails to show sales of such or similar merchandise as required under section 402 (c) of the tariff act. In view of the fact that the affidavit describes the merchandise covered by the sales therein enumerated as unoiled Agave sisalina sisal twine, the same description as that under which the instant twine is invoiced, we find that contention to be without merit.

It is the opinion of the court that the plaintiff herein has sustained his burden of proving that a foreign value existed for the merchandise in suit at the dates of exportation and that there was no higher export value. Under the wording of the statute (section 402, Tariff Act of 1930), before resort can be had to the United States value the appraiser must find that there is neither a foreign nor export value. In view of the finding that plaintiff has shown the existence of foreign

value for this twine, it necessarily follows that the appraiser was in error in using the United States value as the basis of his appraisement. Moreover the record fails to show a previous importation of prototype merchandise at or about the time of exportation of the merchandise here involved, which has been held an essential element in finding United States value. *United States* v. *G. W. Sheldon & Co.*, 23 C. C. P. A. (Customs) 245, 249, T. D. 48108; *Stern Hat Co.* v. *United States*, 26 C. C. P. A. (Customs) 410, C. A. D. 48; *United States* v. *Collin & Gissel*, 29 C. C. P. A. (Customs) 96, C. A. D. 176; and *United States* v. *Draeger Shipping Co., Inc.*, ibid. 258, C. A. D. 199. It is the opinion of the court that the earlier shipment was too remote to form a basis for United States value in these cases. Furthermore, the evidence establishes that the sisal twine in the earlier importation was different in grade and quality from that here involved.

From the record I find that foreign value, as defined in section 402 (c) of the Tariff Act of 1930, is the proper basis for determining the value of the merchandise in controversy, and that such value for the various types is as follows:

Two-ply 500 feet to the pound, $0.35125 per kilo Mex. less 10 per centum.
Two-ply 300 feet to the pound, $0.34 per kilo Mex. less 10 per centum.
One-ply 500 feet to the pound, $0.33125 per kilo Mex. less 10 per centum.

All values f. o. b. mill, packing included.

Judgment will be rendered accordingly.